**Dated: January 18, 2019**
**The following is SO ORDERED:**

_____
**David S. Kennedy**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| In re | |
| William H. Thomas, Jr., | Case No. 16-27850-K |
| aka Bill Thomas, | |
| Debtor. | Chapter 11 |
| SSN: xxx – xx – 8251 | |

## MEMORANDUM AND ORDER RE "CLEAR CHANNEL OUTDOOR, INC.'S RENEWED MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE" COMBINED WITH NOTICE OF THE ENTRY THEREOF

### INTRODUCTION

Clear Channel Outdoor, Inc. ("Clear Channel"), a prepetition judicial lien creditor, filed the instant

motion under 11 U.S.C. § 1104(a)(1)-(2) ("Motion") originally seeking the appointment of a Chapter 11

trustee with "limited powers."[1]  Creditor, the Tennessee Department of Transportation ("TDOT"), and

Tennison Brothers, Inc., also a prepetition judicial lien creditor ("Tennison Brothers"), each filed a notice

---

[1] Clear Channel subsequently orally modified the relief sought at a pre-trial conference held on December 18, 2018, and reiterated its modified position at this Court's hearing on the Motion held on January 15, 2019.  Clear Channel now seeks the appointment of a Chapter 11 trustee with full authority and powers as allotted by the Bankruptcy Code.

of joinder regarding Clear Channel's Motion.[2]  This Motion resulted in three written objections or responses thereto filed by Mrs. Lynn Schadt Thomas ("Mrs. Thomas"), William H. Thomas, Jr., aka Bill Thomas, the above-named debtor ("Mr. Thomas"), and the United States Trustee for Region 8 respectively.  It is noted that the United States Trustee also filed a "Motion to Dismiss or, in the Alternative, Convert Chapter 11 Case to Case Under Chapter 7."  The attorneys for all of the immediate parties in interest participated in the oral arguments for and against the Motion that were held and heard in open court on January 15, 2019.

The ultimate question for judicial determination here is whether "cause" exists as contemplated under 11 U.S.C. § 1104(a)(1), such that a Chapter 11 trustee should be appointed in lieu of Mr. Thomas continuing to serve as a debtor in possession, or whether such appointment of a trustee is in the interests of creditors as contemplated under 11 U.S.C. § 1104(a)(2).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Accordingly, the Court has both the statutory and constitutional authority to hear and determine these proceedings subject to the statutory appellate provisions of 28 U.S.C. § 158(a)(1) and Part VIII ("Bankruptcy Appeals") of the Federal Rules of Bankruptcy Procedure.  The following shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### DISCUSSION OF BACKGROUND FACTS AND INFORMATION AND PROCEDURAL HISTORY OF THIS CHAPTER 11 CASE

This Chapter 11 case arises out of more than a decade of litigation and legalistic bickering primarily between Mr. Thomas and the two judgment creditors, Clear Channel and Tennison Brothers.  As such, a detailed discussion of the relevant pre- and postpetition background facts and procedural history of this Chapter 11 case may be helpful here and may be summarized as follows.

Mr. Thomas, who currently serves here as a Chapter 11 debtor in possession, is also a licensed attorney and businessman.  He is a resident of the State of Tennessee and also a resident of the State

---

[2] For the purposes of this Memorandum and Order, Clear Channel and Tennison Brothers will be collectively referred to as the "Creditors" and TDOT will remain separate and distinct.

of Florida, and has business ventures in Memphis, Tennessee. Clear Channel is a Delaware corporation with its principal address located in San Antonio, Texas; however, at all relevant times here, Clear Channel owned and/or operated billboard advertising structures in Shelby County, Tennessee. Tennison Brothers is a corporation with its principal office located in Memphis, Tennessee. Clear Channel and Tennison Brothers are pre-Chapter 11 Tennessee judicial lien creditors of Mr. Thomas. TDOT is a Tennessee governmental agency with its headquarters located in Nashville, Tennessee, who also is a creditor in this case. Mrs. Thomas is the wife of Mr. Thomas and also an asserted creditor here.

On September 11, 2017, Clear Channel filed a motion seeking the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(1) and (2) ("First Trustee Motion"). Dkt. No. 297. Thereafter, on September 18, 2017, Tennison Brothers filed a Notice of Joinder. Dkt. No. 303. An Objection thereto was filed by Mr. Thomas on September 25, 2017. Dkt. No. 308. The First Trustee Motion came to be heard by this Court on September 27, 2017, whereupon this Court at the early stages of this case denied the First Trustee Motion, but "without prejudice to a future motion being refiled for a change of circumstances not heretofore raised at this hearing." *See* Dkt. No. 311.

On October 26, 2018, Glankler Brown, PLLC ("Glankler Brown"), Memphis counsel for Mr. Thomas in this Chapter 11 case, filed an "Emergency Motion to Withdraw as the Attorney of Record." Dkt. No. 441. As reasons for seeking to withdraw, Glankler Brown asserted that numerous disagreements had arisen with Mr. Thomas and that Mr. Thomas "insisted on taking positions which are contrary to the advice of counsel and had on occasion taken positions which [they] consider repugnant or imprudent." *See* Dkt. No. 441, p. 2. After notice, that matter came to be heard before this Court on October 30, 2018; and an Order granting the withdrawal was entered on November 20, 2018, without opposition. Dkt. No. 461.

Ten days later, on November 30, 2018, Clear Channel filed a "Renewed Motion for Appointment of Chapter 11 Trustee," requesting the appointment of a Chapter 11 trustee with "limited

powers." Dkt. No. 472, p. 2. On December 6, 2018, TDOT filed a Notice of Joinder to the Motion, Dkt. No. 480, and on December 7, 2018, Tennison Brothers filed the same, Dkt. No. 481 (collectively referred to as "Related Joinders"). An Objection to the Motion and Related Joinders was filed by Mrs. Thomas on December 11, 2018, putting forth three main arguments: (1) there is no cause for the appointment of a Chapter 11 trustee and Creditors have failed to demonstrate same; (2) Clear Channel and Tennison Brothers do not have a pecuniary interest in the bankruptcy estate and their interests should be disregarded for purposes of the analysis under § 1104(a)(2); and (3) Mrs. Thomas is preparing to file a confirmable Chapter 11 creditor plan. Dkt. No. 493. On December 13, 2018, the United States Trustee filed a Response to the Motion stating that it takes no position on the Motion, but that "[i]f the Court concludes to direct the appointment of a Chapter 11 trustee, the codified scheme in the Bankruptcy Code and Rules should not be altered with respect to the rights, powers and duties of a trustee appointed under 11 U.S.C. § 1104(a)." Dkt. No. 496, p. 3. It is important to note that the United States Trustee also filed a motion to dismiss this case or, in the alternative, to convert the Chapter 11 case to a liquidating case under Chapter 7. Dkt. No. 497. Mr. Thomas filed a "Response" to the Motion and Related Joinders on December 14, 2018, alleging three main issues: (1) objecting to the appointment of a Chapter 11 trustee "because creditors Clear Channel Outdoor and Tennison Brothers have failed to set forth any change in circumstances since their last Motions for the Appointment of a Trustee were denied"; (2) asserting that such creditors had a right to file their own plan of reorganization but have not done so; and (3) incorporating the objection of Mrs. Thomas by suggesting that the claims of Clear Channel and Tennison Brothers "should be subordinated or denied based upon their punitive nature to all claims of unsecured creditors." Dkt. No. 501.

All of these matters came before this Court on December 18, 2018, for a combined pre-trial conference, whereupon each interested party had the opportunity to, *inter alia*, provide a general overview of their positions and arguments. It should be noted that at the pre-trial conference Clear Channel orally amended its Motion by eliminating its request for the appointment of a Chapter 11

trustee with limited powers and agreeing with the United States Trustee's position that, if appointed, it should be a Chapter 11 trustee with full powers and duties.  This oral amendment has now been reduced to writing and filed with the Court.  *See* Dkt. No. 520 ("Clear Channel submits that the appointment of a Chapter 11 Trustee with all powers and authority allowed under the Federal Rules of Bankruptcy Procedure is the proper course of action to move this bankruptcy to conclusion.").  Tennison Brothers and TDOT orally agreed with the United States Trustee's position as well.  This Court held a hearing on the merits on the instant Motion, Related Joinders, objections, and responses thereto on January 15, 2019.  All attorneys representing the interested parties were present at the hearing.  After notice and opportunity for a hearing, all matters were taken under advisement.  Before discussing the Motion, the Court felt it may be somewhat beneficial to provide a more detailed summary of the extensive background history including the legalistic bickering among Clear Channel, Tennison Brothers, TDOT, and Mr. Thomas to exhibit their relationships with one another.

<u>Clear Channel, Tennison Brothers, and Mr. Thomas</u>

Clear Channel and Tennison Brothers entered into a lease agreement ("Lease") on August 19, 2004, for the erection of a billboard on Tennison Brothers' property located at 450 North Bellevue, Memphis, Tennessee 38105 ("Tennison Brothers Site").  *See Tennison Bros. v. Thomas,* 556 S.W.3d 697, 704 (Tenn. Ct. App. 2017) (hereinafter "*Tennison II*")).  Within days of the execution of the Lease between Clear Channel and Tennison Brothers, Mr. Thomas entered into a written lease with Southern Millwork and Lumber Company, the owner of the real property adjacent to the Tennison Brothers Site. *Id.*  Mr. Thomas also intended to construct a billboard on said real property.  *Id.*  At the time, the *Tennessee Billboard Regulation and Control Act* ("the *Billboard Act*") required permits to be obtained prior to constructing a billboard.  *Id.*; *see also* TENN. CODE ANN. § 54-21-101, *et seq.*  However, because of the proximity of the two properties, only one party could be awarded a permit.  *Id.*

On or about August 24, 2004, Clear Channel applied for and was granted a permit to erect its billboard on the Tennison Brothers Site by TDOT, which happened to be around the same day Mr.

5

Thomas had applied for and was denied the same for the adjacent real property. *Id.* at 704-05. Mr. Thomas, then, requested an administrative hearing before TDOT concerning its decision to grant Clear Channel a permit instead of him. *Id.* at 705. The legal battle over who should be awarded a permit to construct a billboard lasted approximately two years and resulted in a loss for Mr. Thomas. *Id.* However, the Creditors as well as TDOT did not know that Mr. Thomas had already constructed a billboard on the adjacent real property without a permit issued by the State of Tennessee. *Id.* at 706. Upon learning this fact, a demand was made on Mr. Thomas to remove his billboard, but he refused. *Id.* This led to a lawsuit being filed by Tennison Brothers in the Chancery Court of Shelby County, Tennessee ("Chancery Court"), in which the complaint alleged, *inter alia*, that Mr. Thomas "illegally constructed [a] billboard [that] interferes with the construction of the billboard on the Plaintiff's property," and more specifically that Mr. Thomas "maliciously and intentionally" interfered with business relationships, induced breach of contract, and created a public nuisance by failing to remove the billboard. *Id.* at 706-07; *see also* Dkt. No. 123, Ex. 2 at ¶¶ 15, 19-22, 28-29, 33-35.

Tennison Brothers named Clear Channel as a third-party defendant in the lawsuit, in which it answered and filed a cross-complaint against Mr. Thomas asserting various causes of action, including intentional interference with its business relationship with Tennison Brothers and statutory inducement to breach a contract. *Id.* at 707; *see also* Dkt. No. 122, Ex. 1 at ¶¶ 19-25, 27, 29-36, 38-41. Apparently, Mr. Thomas consistently refused to adequately respond to discovery in the Shelby County Chancery Court matter, despite two prior court orders compelling him to do so. *Id.* at 707-08. As such, the Chancery Court entered an Order on November 20, 2009, striking Mr. Thomas's answer and entering a default judgment against him. *Id.* Moreover, approximately six months later, Mr. Thomas, once again, refused to participate in and produce discovery, thereby causing the Chancery Court to enter a second Order forbidding Mr. Thomas from presenting proof related to damages and only allowing him the opportunity to cross-examine witnesses presented by other parties related to damages. *Id.* at 708-09.

After the hearing on damages, the Chancery Court found that Tennison Brothers and Clear Channel did not provide sufficient proof to conclude that Mr. Thomas had an improper motive, as is required to support a claim of intentional interference with business relationships, and therefore no damages were awarded.  *Id.* at 709-10.  Both Tennison Brothers and Clear Channel appealed to the Tennessee Court of Appeals, and it reversed the Chancery Court's findings and conclusions.  *Id.* at 710.  The Tennessee Court of Appeals determined that Tennison Brothers and Clear Channel had properly pled, *inter alia*, the elements for intentional interference with business relationships, that the trial court erred by going outside the pleadings to consider the issue of liability since there were well-pled facts in the respective complaints, and that Mr. Thomas had admitted to his improper motive when the default judgment was entered against him.  *Id.*; *see Tennison Bros. v. Thomas*, 2014 WL 3845122, at *1 (Tenn. Ct. App. Aug. 6, 2014) (hereinafter "*Tennison I*").

On remand from the Tennessee Court of Appeals, the Shelby County Chancery Court appointed a Special Master to calculate the amount and type of damages that should be awarded to Tennison Brothers and Clear Channel for Mr. Thomas's tortious actions.  *Tennison II* at 711.  Ultimately, the Chancery Court adopted the report of the Special Master in its entirety and entered a final judgment awarding damages to Tennison Brothers in the amount of $1,094,670.94 and Clear Channel in the amount of $3,906,000.  *Id.* at 712.

Mr. Thomas appealed the Chancery Court's decision, and the Tennessee Court of Appeals affirmed the Chancery Court.  *Id.*  Mr. Thomas raised various issues on appeal, some of which were rejected and others of which were waived.  *Id.*  Particularly, it should be specifically noted here that the Tennessee Court of Appeals considered the fact that Mr. Thomas had received a favorable ruling in the United States District Court for the Western District of Tennessee that declared the Tennessee *Billboard Act* unconstitutional, and stated that "[o]nce again, we conclude that Thomas cannot pursue this argument on appeal due to the entry of default judgment against him."  *Id.* at 730-31.  The Tennessee Court of Appeals stated further as follows:

> Thomas claims that the district court's ruling regarding constitutionality renders the plaintiffs unable "to recoup under said unconstitutional provisions" in the future.  However, <u>the plaintiffs in this case are not attempting to "recoup" under the Billboard Act.  They are entitled to damages for the tort claims set forth in their complaints, for which they obtained a default judgment.</u>

*Id*. at 731 (emphasis added).

Clear Channel and Tennison Brothers have both filed proofs of claim in this Chapter 11 case based upon the prepetition judgments rendered by the Tennessee State Court on February 4, 2016, against Mr. Thomas.  *See* Proof of Claim Nos. 4 and 7.  However, Mr. Thomas now disputes these claims and has filed an objection to the claims (and the prepetition Tennessee State Court judgments) of both Clear Channel and Tennison Brothers in, for example, his official bankruptcy schedules, oral statements made in open court, and written pleadings filed with this Court.  *See* Dkt. No. 451; *see also* Dkt. No. 39, Sch. E.  In addition to the pending appeal regarding this Court's Memorandum and Opinion in Adversary Proceeding Nos. 16-00260 and 16-00261 rendering the prepetition State Court judgments non-dischargeable under 11 U.S.C. § 523(a)(6),[3] it is expressly noted that Mr. Thomas also has filed separate adversary proceedings in this Chapter 11 case under 11 U.S.C. §§ 547 and 550 seeking to determine if the prepetition State Court judgments were preferences under 11 U.S.C. § 547(b) or fraudulent transfers to Tennison Brothers and Clear Channel.  *See* Adv. Proc. Nos. 17-00157 and 17-00158 herein.  It should further be noted that Mr. Thomas has filed a "Motion for Summary Judgment" in each of the respective adversary proceedings as well as a "Combined Motion for Summary Judgment" in the main case regarding the prepetition State Court judgments.

### TDOT and Mr. Thomas

As mentioned above, TDOT has been engaged in litigation with Mr. Thomas since August 27, 2004, when TDOT denied his application for a permit to construct a billboard.  *Tennison II* at 704.  It is noted that TDOT denied Mr. Thomas' application due to his request being in violation of TDOT Rules and

---

[3] *See* Dkt. No. 58 in Adv. Proc. No. 16-00260-K and Dkt. No. 52 in Adv. Proc. No. 16-00261-K.

Regulations 1680-02-03-.03(1)(a)(4)(i)(I)[4] and TDOT's prior approval granted to Clear Channel. *Id.* at 704-05.  On December 1, 2004, Mr. Thomas appealed the denial of his application to an Administrative Law Judge, and as a result of such appeal, TDOT voided the permit it previously issued to Clear Channel to erect the billboard on the Tennison Brothers Site. *Id.* at 705.  While on appeal, Mr. Thomas apparently constructed the billboard without first receiving permission from the State of Tennessee. *Id.*  In addition, in December 2005, unperceived by the Creditors and TDOT, Mr. Thomas sold the unpermitted billboard to CBS Outdoor, who were under the impression that all matters involving the State permit had been resolved and that TDOT had been ordered to issue a permit. *Id.*  It should be noted that over the span of the permit litigation, Mr. Thomas continued to participate in the TDOT administrative proceedings portraying the idea that he still held a lease on the property and owned the "illegally constructed" billboard. *Id.*

On March 5, 2007, Administrative Law Judge, the Honorable Thomas G. Stovall, issued a written ruling that TDOT had properly issued to Clear Channel permits to construct the Tennison Billboard and that the Thomas Billboard was illegally constructed and should be immediately removed. *Tennison I* at 12. After Judge Stovall issued his ruling on March 5, 2007, Mr. Thomas refused to remove the Thomas Billboard. Mr. Thomas then appealed the Order to the Honorable Gerald F. Nicely, the Commissioner of TDOT. *Id.*  On July 31, 2007, the Commissioner of TDOT issued a Final Order upholding the Order issued by the Administrative Law Judge and held that the Thomas Billboard had been illegally constructed and should be immediately removed. *Id.*  After the Commissioner of TDOT issued his ruling, Mr. Thomas nonetheless refused to remove the Thomas Billboard. *Id.*  Since approximately 2006, TDOT sought to remove Mr. Thomas's signs that did not comply with the *Billboard Act* through a prior enforcement action in Chancery Court. *Thomas v. Schroer*, 248 F. Supp. 3d 868, 874 (W.D. Tenn. 2017), reconsideration denied September 20, 2017.

On March 25, 2013, Mr. Thomas filed his first lawsuit in federal court against only TDOT, asserting numerous causes of action including the challenging of the constitutionality of the Tennessee *Billboard Act*

---

[4] Tenn. Comp. R. & Regs. 1680-02-03-.03(1)(a)(4)(i)(I) provided that "no two structures shall be spaced less than 1,000 feet apart on the same side of the highway."

9

on First Amendment grounds (the "First Federal Suit").  *Id*.; *see Thomas v. Tennessee Dep't of Transp.*,
2013 WL 12099086 (W.D. Tenn. October 28, 2013) (dismissing the case and holding that TDOT is a state
agency entitled to sovereign immunity under the Eleventh Amendment).  However, while the First Federal
Suit was on appeal, Mr. Thomas filed his second lawsuit against TDOT, instead this time naming multiple
Tennessee state officials in their official capacities.  *Schroer*, 248 F. Supp. 3d at 874-75; *see* Dkt. No. 197,
Ex. A.  The Second Federal Suit alleged that one of the many billboards he owned erected without a permit
was entitled to First Amendment protection as a display of non-commercial speech.  *Schroer*, 248 F. Supp.
3d at 875.  On March 31, 2017, the Western District of Tennessee found the *Billboard Act* to be an
unconstitutional, content-based regulation of speech.  *Id*. at 894-95.  Specifically, the District Court found
that the *Billboard Act*, as applied to Mr. Thomas's non-commercial messages on one of his billboards
(referred to as the "Crossroads Ford Sign"), was a violation of the United States Constitution by way of the
First Amendment's Free Speech provision.  *Id*.  Thereafter, the Commissioner of TDOT filed a motion for
reconsideration, but it was denied.  *See Thomas v. Schroer*, 2017 WL 6489144, at *2 (W.D. Tenn.
September 20, 2017).  That suit is now on appeal and pending before the Sixth Circuit.

Aside from the aforementioned state court and federal court litigation, it should be noted that Mr.
Thomas is also still engaged in a separate state court lawsuit with TDOT.  Due to the contentious
relationship, the State of Tennessee sought a restraining order, temporary injunction, declaratory judgment,
and permanent injunction in the Chancery Court in Shelby County, Tennessee, back on March 2, 2007.  It
was assigned to the Honorable Chancellor Walter Evans: *see* case number CH-07454 therein.  Numerous
pleadings appear to have been filed in that case, and several appeals also seem to have been made to the
Tennessee Court of Appeals and Tennessee Supreme Court regarding various matters.  That Chancery Court
suit is ongoing.

TDOT has filed a proof of claim in this Chapter 11 case based on violations of the *Billboard Act*.
*See* Proof of Claim No. 5.  However, Mr. Thomas has objected to this claim, Dkt. No. 385, and it is an
ongoing contested matter pursuant to Bankruptcy Rule 9014(a).  FED. R. BANKR. P. 9014(a).  It should also

be noted that TDOT and Mr. Thomas have filed various pleadings regarding discovery, all of which are currently pending and in dispute.  *See* Dkt. Nos. 428, 429, 439, 449, 484, and 503.

## LEGAL ANALYSIS

The Bankruptcy Code gives the court the authority to order the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a).  This section provides, in pertinent part, that:

> At any time after the commencement of the case but before confirmation of the plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).  In fact, regardless of a party in interest, a bankruptcy court also has the power in appropriate cases to appoint a trustee *sua sponte*.[5]  *See* 11 U.S.C. § 105(a).[6]

However, "it is settled that appointment of a trustee should be the exception, rather than the rule." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989).  "There is a strong presumption in Chapter 11 cases that the debtor-in-possession should be permitted to remain in control of the corporation absent a

---

[5] *See also, e.g.*, *United States v. Bond*, 762 F.3d 255, 260 n.4 (2d Cir. 2014); *Byrd v. Johnson* (*In re Byrd*), 484 Fed. Appx. 845 (4th Cir. 2012); *United States Mineral Prods. Co. v. Official Comm. of Asbestos Bodily Injury & Prop. Damage Claimants* (*In re United States Mineral Prods. Co.*), 105 Fed. Appx. 428, 430-31 (3d Cir. 2004); *Fukutomi v. United States Trustee* (*In re Bibo, Inc.*), 76 F.3d 256, 258 (9th Cir. 1996); *Keven A. McKenna, P.C. v. Official Comm. of Unsecured Creditors* (*In re Keven A. McKenna, P.C.*), 2011 WL 2214763, at *4 (D.R.I. May 31, 2011); *Allen v. King*, 461 B.R. 709 (D. Mass. 2011); *Ngan Gung Rest. v. Official Comm. Of Unsecured Creditors* (*In re Ngan Gung Rest.*), 195 B.R. 593 (S.D.N.Y. 1996); *In re Lynnhill Condo.*, 2014 WL 4629097 (Bankr. D. Md. Sept. 12, 2014); *In re Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr. W.D. Mich. 1993).

[6] Section 105(a) of the Bankruptcy Code provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process." 11 U.S.C. § 105(a) (emphasis added).

showing of need for the appointment of a trustee." *In re Natron Corp.*, 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005) (citation omitted). This presumption is based on the facts that the debtor in possession has a strong sense of familiarity with the business and no trustee expense will be required, both of which will likely benefit the creditors as well as the estate. *In re Marvel Entm't Group*, 140 F.3d 463, 470 (3d Cir. 1998) (citing *Sharon Steel Corp.*, 871 F.2d at 1226 (citation omitted)). "The debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization." *Petit v. New England Mortg. Servs.*, 182 B.R. 64, 69 (D. Me. 1995) (internal quotations omitted). Accordingly, appointing a trustee in a Chapter 11 case is an extraordinary remedy. *See* 7 COLLIER ON BANKRUPTCY ¶ 1104.02[3][b][i] (16th ed. 2016); *see also Adams v. Marwil (In re Bayou Grp., LLC)*, 564 F.3d 541, 546 (2d Cir. 2009). Thus, the question of whether a trustee should be appointed in a Chapter 11 case must be considered by the court on a case-by-case basis considering a totality of the particular facts and circumstances, and the party moving for the appointment of a trustee must prove the need for such by clear and convincing evidence.[7] *Sharon Steel Corp.*, 871 F.2d at 1226.

Section 1104(a)(1) of the Bankruptcy Code mandates the court to appoint a trustee in a Chapter 11 case upon, for example, a determination of "cause." *See Oklahoma Ref. Co. v. Blaik (In re Oklahoma Ref. Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988). Yet, "a determination of cause . . . is within the discretion of

---

[7] It should be noted that the Sixth Circuit has not determined the appropriate burden of proof for the appointment of a trustee under 11 U.S.C. § 1104; and there is a circuit split as to the applicable standard. The majority view, and the one followed by two bankruptcy courts within the Sixth Circuit, is that the moving party must establish the grounds for appointment of a trustee by clear and convincing evidence. *Adams v. Marwil* (*In re Bayou Grp., LLC*), 564 F.3d 541, 546 (2d Cir. 2009); *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc.* (*In re G-I Holdings, Inc.*), 385 F.3d 313 (3d Cir. 2004); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) (citation omitted); *Kwitcherbeliakin, LLC v. LaPorte Sav. Bank*, 2011 WL 93714, at *5-6 (N.D. Ind. Jan. 10, 2011); *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. March 31, 2015); *In re Biolitec*, 2013 WL 1352302, at *8 (Bankr. D.N.J. April 3, 2013); *In re Microwave Prods. of America, Inc.*, 102 B.R. 666 (Bankr. W.D. Tenn. 1989); *In re William A. Smith Constr. Co.*, 77 B.R. 124 (Bankr. N.D. Ohio 1987); *In re St. Louis Globe-Democrat, Inc.*, 63 B.R. 131 (Bankr. E.D. Mo. 1985); *In re Evans*, 48 B.R. 46 (Bankr. W.D. Tex. 1985). However, the minority of courts believe that the moving party should establish the grounds for appointment of a trustee a preponderance of the evidence. *Keeley & Grabanski Land P'ship v. Keeley* (*In re Keeley & Grabanski Land P'ship*), 455 B.R. 153 (B.A.P. 8th Cir. 2011); *In re Costa Bonita Beach Resort*, 479 B.R. 14, 44 (Bankr. D.P.R. 2012); *In re Veblen West Diary LLP*, 434 B.R. 550 (Bankr. D.S.D. 2010); *Tradex Corp. v. Morse*, 339 B.R. 823 (D. Mass. 2006). The Bankruptcy Code is silent on the issue.

the court." *Marvel Entm't*, 140 F.3d at 472 (quoting *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987)).  It is important to note that section 1104(a)(1) does not provide an exhaustive list of "cause" for which a trustee may be appointed; but rather, it provides that the court shall order the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, gross mismanagement of the debtor by current management . . . or similar cause . . ."  *See* 11 U.S.C. § 102(3) (providing that the terms "includes" and "including" are not limiting).  Additional factors a court may use to determine if "cause" exists include whether:

> (1) the alleged misconduct was material; (2) the debtor treated insiders and affiliated entities better or worse than other creditors and customers; (3) the debtor made pre-petition voidable preferences or fraudulent transfers; (4) the debtor was unwilling or unable to pursue causes of action belonging to the estate; (5) conflicts of interest on the part of management interfered with its ability to fulfill its fiduciary duties to the debtor; and (6) management engaged in self-dealing or squandering of corporate assets.

*In re LHC, LLC*, 497 B.R. 281, 292 (Bankr. N.D. Ill. 2013) (citing *In re Intercat, Inc.*, 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000)); *accord Nartron Corp.*, 330 B.R. at 592.  Although there is no Sixth Circuit authority interpreting the scope of the provisions of 11 U.S.C. § 1104, there indeed are a number of appellate courts that have ruled in this area.  For example, the Third Circuit has found that intense, irreconcilable conflicts and <u>acrimony</u> between the debtor and creditors can rise to the level of "cause" under 11 U.S.C. § 1104(a)(1).  *See Marvel Entm't*, 140 F.3d at 472-74 (concluding, among other things, that "there is no likelihood of any cooperation between the parties in the near future" and finding sufficient cause under § 1104(a)(1) to appoint a Chapter 11 trustee to facilitate the case).  In addition, the Fifth Circuit has upheld the appointment of a Chapter 11 trustee under 11 U.S.C. 1104(a)(1) based on a finding of acrimony.  *See Cajun Elec. Power Coop., Inc. v. Cent. Louisiana Elec. Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 74 F.3d 599, 600 (5th Cir. 1996) (adopting on rehearing the opinion of the dissent in 69 F.3d 746, 751 (5th Cir. 1995)), *cert. denied*, 519 U.S. 808 (1996) (stating that acrimony is cause to appoint a trustee "when the inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor or . . . when the parties 'begin working at cross-purposes'").

In *Marvel Entertainment*, the Chapter 11 debtor in possession and the creditors had material conflicts of interests, severe acrimony, and took dramatically different stances on many issues, citing, among other things, the debtor in possession's institution of several adversary proceedings. 140 F.3d at 473. The Third Circuit adopted the reasoning of the Fifth Circuit in *Cajun Electric*, 74 F.3d at 600 (adopting dissent at 69 F.3d 751), which recognized that some debtor-creditor conflict is "deep-seeded" and so inherent that proceeding like a typical Chapter 11 case is virtually impossible. *Id*. The Third Circuit held that, given the fact that this is a complicated bankruptcy case coupled with strife-ridden history and acrimony, the appointment of a trustee to act as a neutral and efficient fiduciary was appropriate under both § 1104(a)(1) or (a)(2). *Id*. at 475. It should be noted, however, that the Third Circuit expressly held that "there is no per se rule by which mere conflicts or acrimony between debtor and creditor mandate the appointment of a trustee." *Id*. at 473. Instead, the Third Circuit stated that the court must look at the circumstances of the case and such determination must be made on a case-by-case basis. *Id*.

Mr. Thomas, joining with Mrs. Thomas, argue that the Creditors, also including TDOT, have not meaningfully addressed any "cause" for the appointment of a Chapter 11 trustee and that "mere acrimony" is not sufficient cause. This Court, however, disagrees under the totality of the particular facts and circumstances existing in this case. Here, as in *Marvel Entertainment*, 140 F.3d at 473, and *Cajun Electric*, 74 F.3d at 600 (adopting dissent at 69 F.3d at 751), there is no reasonable likelihood of any cooperation among the parties in the foreseeable future, and the parties have been working at cross-purposes since this case was transferred to this Court. Simply put, the relationships here are very deeply-seeded with severe acrimony. Mr. Thomas, the Creditors, and TDOT have substantial differences of opinion regarding the outcome of the relevant matters before the Court. No party disputes that there is a long history of severe acrimony among the interested parties in this case (i.e., Mr. Thomas, the Creditors, and TDOT). As discussed above, the relationship among Mr. Thomas, the Creditors, and TDOT was contentious even prior to the commencement of this Chapter 11 case. Moreover, this severe acrimony has been carried over into this Chapter 11 case clearly impeding its success. *Compare* FED. R. BANKR. P. 1001 ("These rules shall be construed, *administered, and employed by the court and the parties* to secure the just, speedy, and

14

inexpensive determination of every case and proceeding.").  Over the course of approximately two and a half years of litigation since the filing of Mr. Thomas's Chapter 11 petition, these interested parties have filed numerous Bankruptcy Rule 7001 adversary proceedings and Bankruptcy Rule 9014 contested matters against each other, in addition to various related contested motions, and the bankruptcy court proceedings have been hampered by numerous discovery disputes among these interested parties.  *See*, for example, *Petit*, 182 B.R. at 65 (affirming the appointment of a trustee due to, among others, the fact that "[t]he postpetition proceedings [were] hampered by numerous discovery disputes" and reasoning that this "may be the only way that the bankruptcy court can ensure that reorganization will proceed").  Like the above-cited cases, "this is a large messy bankruptcy that promises to get worse without a disinterested administrator at the helm." *Marvel Entm't*, 140 F.3d at 473 (citing *Cajun Elec.*, 74 F.3d at 600 (adopting dissent at 69 F.3d at 751)).  This has been an unusual, atypical Chapter 11 case to say the least.

Mr. Thomas also alleges that the Creditors have not demonstrated any change in circumstances since the filing of the First Motion to give rise to the appointment of a Chapter 11 trustee; yet, this Court must strongly disagree.  For example, since the filing of the First Trustee Motion, Glankler Brown, PLLC, counsel for Mr. Thomas, has withdrawn, and Mr. Thomas indicated that he would be hiring new counsel.  *See* Dkt. No. 461.  Despite this indication, Mr. Thomas, not a known bankruptcy lawyer, has since chosen to act *pro se*.  In addition, and after almost two and a half years, no § 1125 disclosure statement has been approved and a Chapter 11 plan has yet to be filed by Mr. Thomas, the Creditors, or TDOT notwithstanding the fact that the exclusivity period aborted back in 2017.  Further, there has evidently not been any type of negotiation among Mr. Thomas, the Creditors, TDOT, and other parties in interest, and it appears likely that there will be none given the exact history of this case and the continued legalistic bickering.  *See Petit*, 182 B.R. at 70 (finding that "[t]he tangled history of the[] proceedings suggest[ed] that 'friction' will continue at an unacceptable level").  As such, for all of the reasons mentioned above including the lengthy and severe acrimony among the parties, this Court finds

that sufficient "cause" indeed exists here to cause the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(1).

Unlike § 1104(a)(1)'s mandatory provision, § 1104(a)(2) "envisions a flexible standard." *Marvel Entm't*, 74 F.3d at 474. Section 1104(a)(2) expressly provides that the court shall order for the appointment of a trustee in a Chapter 11 case if it is in the best interests of the creditors and the estate. "The flexible standards embodied in § 1104(a) are intended to accommodate two goals: (1) facilitation of the debtor's reorganization; and (2) protection of the public interest and of creditors." 7 COLLIER ON BANKRUPTCY ¶ 1104.02[3][a] (16th ed. 2016) (citing H.R. 8200, 94th Cong. § 1104 (1978)). The "interests" standard appears to be more of a balancing test; that is, whether the benefits to all interests of the estate that would come from the appointment of a chapter 11 trustee outweigh the detriment of the estate. *See In re Microwave Products of America, Inc.*, 102 B.R. 666, 675 (Bankr. W.D. Tenn. 1989). Courts have considered various factors when utilizing this balancing test, including: "(1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospect for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs." *LHC*, 497 B.R. at 293 (citations omitted). It should be noted that "[a]ppointment of a trustee under § 1104(a)(2) is within the sound discretion of the bankruptcy judge." *Id*. (citations omitted).

Mrs. Thomas interestingly alleges, and Mr. Thomas joins in, that the Creditors' claims should be subordinated under the Bankruptcy Code, resulting in the Creditors apparently being left with non-pecuniary interests, and therefore giving rise to disregard their judicial liens and resulting interests for the purposes of §§ 1104(a)(2) and 1109(b). More specifically, Mrs. and Mr. Thomas argue, notwithstanding the Creditors' prepetition judicial liens arising out of final tort judgments, that the Creditors are not "parties in interest" under §§ 1104(a) and/or 1109(b), and that only those whose pecuniary interests may be adversely affected under § 1104(a)(2) may be considered. The test under § 1104(a)(2) regarding pecuniary interests only gives standing to "person with a financial stake in the bankruptcy court's order." *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 499 (6th Cir. 1990) (recognizing the Supreme

Court's "public interest" exception to the pecuniary interest test and finding that the United States Trustee has proper standing when considering an appointment under § 1104).

This Court has already ruled that Clear Channel and Tennison Brothers have valid claims based in tort law and non-tort law. *See* Dkt. No. 525 (emphasis added). Moreover, this Court found that because the Creditors had "claims" under 11 U.S.C. § 101(5), they also had proper standing to request the appointment of a trustee under 11 U.S.C. §§ 1104(a)(1)-(2) and 1109(b). *Id.* (emphasis added). Further, this Court accentuated the point that "the amount of the claim, even if de minimus, may create standing to institute such actions." *Id.* (emphasis added). Therefore, the Court strongly disagrees with the arguments made by Mrs. and Mr. Thomas.

The Court notes that in this Chapter 11 case there are approximately 600 docket entries that have been made on the Court's docket sheet in the main case, five adversary proceedings,[8] and many Rule 9014 contested matters that have been made. However, very little time seems to have been devoted by Mr. Thomas to a 11 U.S.C. § 1125 disclosure statement and 11 U.S.C. § 1121 plan. Instead, so much time has been utilized by Mr. Thomas (debtor in possession) and certain interested parties, on traditional litigation matters and not core bankruptcy matters. Moreover, much time, as noted, has been unfortunately devoted to legalistic bickering. *See, e.g.*, *In re The Bible Speaks*, 74 B.R. 511 (1987) (holding that legalistic bickering between the debtor and creditors provided justification for the appointment of a chapter 11 trustee) (emphasis added).

It also is noted that a Chapter 11 trustee is a disinterested party who serves as a fiduciary. Section 1104(d) of the Bankruptcy Code requires, in part, that the Chapter 11 trustee be a "disinterested person." *See* 11 U.S.C. § 1104(d). The Bankruptcy Code defines "disinterested person" as a person that:

> (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect

---

[8] *See* Adv. Proc. Nos. 16-00260, 16-00261, 17-00157, 17-00158, and 18-00131.

17

relationship to, connection with, or interest in, the debtor, or for any other
reason.

11 U.S.C. § 101(14).  Here, neither Mr. Thomas nor Clear Channel, Tennison Brothers, or TDOT are

disinterested parties.  These immediate, non-disinterested parties have been litigating for almost fifteen

years with no end in sight.  A change is desperately needed in this case and estate administration and is

clearly warranted.

A Chapter 11 trustee will provide an objective, dispassionate, and disinterested view, for example,

on Mr. Thomas's objections to claims in addition to all the other pending and future contested matters and

adversary proceedings.  "The need for a neutral party to mediate disputes between the debtor and its

creditors is ground for a trustee's appointment."  *In re The Bible Speaks*, 74 B.R. 511, 513 (Bankr. D. Mass.

1987) (citing *In re Bonded Mailings, Inc.*, 20 B.R. 781 (E.D.N.Y. 1982).  In addition, "[w]hen significant

tensions are present among the parties . . ., appointment of a trustee may diffuse tensions . . . ."  7 COLLIER

ON BANKRUPTCY ¶ 1104.02[3][d] (16th ed. 2016).  Moreover, in these types of situations, the appointment

of a trustee may be essential to achieve successful plan negotiations and, ultimately, the reorganization of

the debtor.  *Marvel Entm't*, 140 F.3d at 475.  Mrs. Thomas alleged that she is preparing to file a confirmable

creditor Chapter 11 plan, but one has yet to be filed.  In addition, Mr. Thomas argued that the Creditors,

including TDOT, could file their own plan of reorganization, but have failed to do so; however, Mr.

Thomas, himself, has apparently not even made an effort to do so.  A Chapter 11 trustee, of course, could

file a plan (and also act as a de facto mediator of sorts).  Considering the high level of acrimony that exists

here and the amount of legalistic bickering that has taken place among the parties certainly makes the

appointment of a trustee in the best interests of all parties and the estate.  *See Petit*, 182 B.R. at 70 (finding

for appointment of a trustee and stating that "[w]hile some degree of antagonism and animosity between

a debtor and creditors can be expected in any bankruptcy proceeding, it [can] reach[] a particular

intensity [] which [can] complicat[e] efforts to 'reorganize'. . . .); *see also The Bible Speaks*, 74 B.R.

at 512 (stating that "friction [had] developed between the Debtor and the Creditors' Committee which

threaten[ed] to engulf [the] estate in costly and legalistic bickering over the entire range of the

reorganization process"). Therefore, under 11 U.S.C. § 1104(a)(2), this Court finds that the appointment of a Chapter 11 trustee is clearly called for and is otherwise in the best interests of the creditors and the estate in this case – i.e., a trustee with <u>full</u> statutory powers, duties, and responsibilities.

## CONCLUSIONS

Based on the totality of the particular facts and circumstances and applicable law as discussed above, this Court concludes that statutory grounds exist under both 11 U.S.C. § 1104(a)(1) and (2) for the appointment of a disinterested Chapter 11 trustee. More specifically, this Court finds that proper "cause" exists for the appointment of a Chapter 11 trustee with <u>full</u> powers, duties, and responsibilities and that the appointment is in the interest of the creditors as well as other interests in the estate, including Mr. and Mrs. Thomas. Thus, Clear Channel's Renewed Motion for the appointment of a Chapter 11 trustee, which has been joined by TDOT and Tennison Brothers, is hereby granted under both 11 U.S.C. § 1104(a)(1) and (2), consistent with the above findings of fact and conclusions of law.

Accordingly, based on the foregoing and consideration of the entire Chapter 11 case and its prepetition and postpetition records as a whole, **IT IS ORDERED AND NOTICE IS HEREBY GIVEN** that:

1. "Clear Channel Outdoor Inc.'s Renewed Motion for Appointment of Chapter 11 Trustee" is GRANTED and the Chapter 11 trustee to be selected and appointed by the United States Trustee for Region 8 shall serve with full statutory duties, powers, and responsibilities.[9]

2. The Bankruptcy Court Clerk shall cause a copy of this Order and Notice to be sent to the following interested persons:

> William H. Thomas, Jr., *Pro Se*
> 13599 Perdido Key Drive, Unit T-SH2A
> Pensacola, Florida 32507-4644
> *Debtor in Possession*

---

[9] The United States Trustee requested, at the hearing on this Motion, to withdraw its "Motion to Dismiss or, in the Alternative, Convert Chapter 11 Case to Case Under Chapter 7" if the Court decided to appoint a Chapter 11 trustee. The Court will await the submission of the United States Trustee's proposed order authorizing it to withdraw its earlier motion to dismiss or convert this case from Chapter 11 to Chapter 7.

Robert L. J. Spence, Jr., Esq.
Kristina A. Woo, Esq.
The Spence Law Firm
80 Monroe Avenue, Garden Suite One
Memphis, Tennessee 38103
*Attorneys for Clear Channel Outdoor, Inc.*

Kathy Baker Tennison, Esq.
8295 Tournament Drive, Suite 150
Memphis, Tennessee 38125
*Attorney for Tennison Brothers, Inc.*

Stuart B. Breakstone, Esq.
1661 International Place Drive, Suite 400
Memphis, Tennessee 38120
*Attorney for Tennison Brothers, Inc.*

Michael B. Willey, Esq.
Stuart F. Wilson-Patton, Esq.
Lorrie N. Hayes, Esq.
Office of the Attorney General
State of Tennessee
P.O. Box 20207
Nashville, Tennessee 37202
*Attorneys for Tennessee Department of Transportation*

Adam M. Langley, Esq.
Butler Snow, LLP
P.O. Box 171443
Memphis, Tennessee 38187
*Attorney for Lynn Schadt Thomas*

S. Keenan Carter, Esq.
Butler Snow, LLP
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
*Attorney for Lynn Schadt Thomas*

Paul A. Randolph, Esq.
Acting United States Trustee for Region 8
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103

Sean M. Haynes, Esq.
Assistant United States Trustee for Region 8
200 Jefferson Avenue, Suite 400
Memphis, Tennessee 38103

Barbara M. Zoccola, Esq.
Assistant United States Attorney
167 N. Main, Suite 800
Memphis, Tennessee 38103
*Attorney for Internal Revenue Service*

John J. Cook, Esq.
Kelly L. Hagy, Esq.
Walk Cook & Lakey, PLC
431 S. Main Street, Suite 300
Memphis, Tennessee 38103
*Attorneys for City of Memphis*

Additional courtesy and informational copies to:

Michael P. Coury, Esq.
Jessica Lynn Indingaro, Esq.
Glankler Brown, PLLC
6000 Poplar Avenue, Suite 400
Memphis, Tennessee 38119